29 C.C.P.A.(Patents)

## In re CAMP.
### Patent Appeal No. 4601.

Court of Customs and Patent Appeals.
April 27, 1942.

K. Wilson Corder, of Atlanta, Ga., for appellant.

W. W. Cochran, of Washington, D. C. (Clarence W. Moore, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

The application for patent here involved relates to traffic guards for highways— "more specifically," the specification states, "to a new and improved spring post for use in conjunction with highway guard rails." Ten claims of the application (stated in the brief for appellant to be "relatively narrow") were allowed by the examiner, but seven claims of broader scope were rejected by him as unpatentable over prior art cited. Upon appeal the Board of Appeals affirmed the rejection by the examiner and the applicant appealed to this court for review of the board's decision.

The claims upon appeal read:

"3. A traffic guard comprising a series of posts, said posts consisting of a plurality of springs, and an impact member disposed longitudinally of said posts.

"4. A traffic guard comprising a series of leaf spring posts, and an impact member disposed longitudinally and entirely to one side of said posts.

"5. A guard rail comprising a flexible sheet metal band disposed entirely to one side of a series of spaced resilient spring metal posts.

"6. A guard rail comprising a flexible sheet metal band disposed entirely to one side of a series of leaf spring metal posts."

"9. A traffic guard comprising a series of supports, and a resilient impact member disposed to one side of said supports with a portion of said impact member at the support passed between portions of said support."

"19. A traffic guard comprising a series of off-set resilient spring metal posts and an impact member disposed longitudinally thereof."

"26. A guard rail comprising a series of spaced resilient spring metal posts, and a sheet metal band passed through said series of posts longitudinally thereof."

The references listed in the decision of the board are:

McDougall, 351,194, Oct. 19, 1886.

Lieb, 449,125, Mar. 31, 1891.

Michod, 1,106,826, Aug. 11, 1914.

Brown (British), 201,751, Aug. 9, 1923.

Boyle, 1,922,878, Aug. 15, 1933.

Benedict, 1,927,303, Sep. 19, 1933.

Edge, 1,970,954, Aug. 21, 1934.

McFadden et al., 2,013,716, Sep. 10, 1935.

Shepherd, 2,093,577, Sep. 21, 1937.

Appellant's brief before us, after saying that the main thought of appellant's invention lies in the use of flexible resilient

spring metal posts in a highway guard rail structure, stated:

"The device under consideration consists essentially of an impact member associated with flexible, resilient spring posts which yield under impact and then return to their normal position. This results in a structure having maximum resistance to impact, yet which may be fabricated at a minimum weight, which in turn means that it affords the public the greatest possible protection at the lowest possible cost."

The brief filed by the Solicitor for the Patent Office describes the structure in greater detail and (omitting numerals and page references) we quote therefrom the following:

"In common with known traffic guards, Camp's guard comprises a series of posts and a resilient sheet-metal band or 'impact member' mounted thereon, and is intended to be constructed along the edge of a highway to prevent automobiles from leaving the highway when out of control and to direct them back onto the highway. In accordance with his expressed intention of improving the posts of such a traffic guard, Camp provides a post comprising two spring metal. parts, or leaves, which are joined together at their ends and centrally are spaced by a web. The post, upon impact of an automobile, yields to a predetermined degree, thereby cushioning the shock. The upper portion of [one metal] part [or leaf] is offset to reduce the danger of a projecting portion of an automobile contacting the post rather than the band."

It is then pointed out that, as shown in certain figures of appellant's drawings, the band element or "impact member" may be passed between the leaves "instead of being entirely to one side of the post," as shown in other figures.

Appealed claims 3, 4, 5, and 6 stand rejected on the patent to Michod in view of (or, as the board stated it, "considered with") the patent to Lieb, the patent to Shepherd being also referred to.

The patent to Michod is for a fence. It discloses a construction having "corner," or "end," posts, made of concrete, "so braced, anchored or otherwise secured in the ground that they will be rigid and unyielding," and line posts located at intervals between such end or cornerposts, the line posts being preferably "flexible or resilient." It is said in the specification that the line posts may be made of any

suitable material "such as for example, high carbon, or vanadium, steel, and of such shape in cross-section and of such thickness that they will be yieldable to the laterally directed force to which fences are subjected in use." A figure of the drawings illustrates the line posts as being in the form of a right angle member and the specification teaches the embedding of their lower ends in concrete below the level of the ground. The "partition, or barrier" (shown in the drawing as ordinary wire mesh) is secured to the posts "in any suitable manner." The idea seems to be that when force is exerted laterally against the fence, as, for example, by an animal running against it, the fence will yield under the force but will spring back into normal position as soon as the force is removed.

The patent to Lieb is for an elastic pole for electric wires, such as "wires of telegraph, telephone, and similar lines, also for overhead electric-railway systems and other analogous uses * * *." The specification recites that the invention "consists in constructing the pole in such manner that elasticity is given to it by reason of the fact that the parts of the pole are capable of movement relative to each other, whereby elasticity is secured and gradually-increasing resistance to the strain is presented." Different forms of poles are illustrated in the drawings. The board referred specifically to a form illustrating "a pole made of flat metal disposed as springs." It is unnecessary to describe it in minute details. It is made of a series of metal leaves, and designed to support a wire, as, for example, a trolley wire. When the wire is subjected to any unusual force, as, for an example, a sudden blow from the trolley, the leaves, moving relative to each other, operate to care for the strain and give automatic adjustment to what are designated as "span-wires" upon which the trolley wire is supported.

The patent to Shepherd is for a highway guard. The board described and discussed it as follows:

"* * * [It] discloses a post bent laterally in the direction of the roadway and which is intended to be distorted outwardly by a car striking it and thereby absorb the shock. In this patent the post is not a spring construction so it will not return to its orginal position after the force of the shock has been spent. However, in this patent the patentee depends on the distortion of the post itself rather than on some

yieldable means on the post to absorb the shock. Any one working in the guard rail art would be taught by this patent to employ a distortable post to absorb the shock. If it is desired to have the post return to its original position a spring post would obviously be employed."

It will be observed that claim 9 uses the word "supports" and does not specify "posts." It was held by the board that the claim "must be read as broadly as its language will permit," and it was rejected as reading directly on the respective patents to Boyle, Benedict, and Edge. It is deemed unnecessary to describe the construction shown in each of those patents. One of the figures shown in the drawing of the Edge patent (which is for a highway guard) discloses a post with a member designated as a "bar" bolted thereto. A coil spring is held in position by the bar, and within the spring another bar is located and a clamping plate is held to the latter bar by bolts which bolts extend into and retain an outer clamping plate in position to hold the impact member (composed of strands of wire) against the first named clamping plate.

Claim No. 19, it will be observed, provides for a series of offset posts, the posts being of the same type as those described in claims 3 to 6, inclusive. The only limitation of this claim which distinguishes it from claims 3 to 6, inclusive, is the offsetting feature. The offsetting feature means that rows of posts are placed in different alinement and the "impact member" or metal band is attached to the inside of one row of posts and to the outside of the other, the rows being so positioned that the band itself normally remains in alinement.

Claim 26 distingushes from claims 3 to 6, inclusive, only in providing that the "impact member" or metal band be "passed through" a series of the resilient posts. In effect, it was held by the tribunals of the Patent Office that the prior art, as illustrated, for example, in the patent to McDougall (which is for a fence post) discloses an arrangement which anticipated the "passing through" feature.

As we understand the decision of the board, the rejection of all the appealed claims, except claim No. 9, was based primarily on the patent to Michod in view of the patent to Lieb, the other patent references being of an auxiliary nature and cited merely as disclosing specific features which have been described. In the concluding part of its decision, the board said:

"The main question here with respect to claims 3 to 6, 19 and 26 is whether the Michod patent as well as the Lieb patent are from arts sufficiently close that these patents are proper references. It is our opinion that they are and therefore we think the examiner has properly applied them."

It is quite earnestly contended by appellant that the respective patents to Michod and Lieb are in a nonanalogous art and are not proper references in the case, and it is asserted, in substance, that a combination of their structural features would not produce a traffic guard comprising a series of posts made up of a plurality of springs and an impact member disposed longitudinally of the posts, or entirely to one side of the posts, as called for by claims 3, 4, 5, and 6; also, it is pointed out that a structure combining the two patents would not include a flexible sheet metal band as an impact member such as is named specifically in claims 5 and 6.

We feel constrained to agree with those contentions. While, in some respects, there may be said to be a certain analogy between farm or ranch fencing (the field of the Michod patent) and highway guards, it is obvious that the structure of such guards, to be of any real value as guards, must be quite different from the ordinary fence. Furthermore, while the Michod patent teaches the desirability of having flexible line posts intermediate the rigid corner or end posts and one of the drawings shows a post in leaning position, we fail to discern any features in the actual structure of the posts which give them resiliency. It may be that resiliency is inherent in the material of which the posts are composed, but so far as structure is concerned we can find nothing which would cause a post once bent to spring back to its normal position. Certainly no structure resembling the spring posts of appellant is disclosed. The wire mesh, of course, has a certain resiliency but concededly this of itself does not meet the post limitations of the appealed claims.

It may be conceded that appellant's metal bands constituting the impact members are, per se, old, and that they are shown in

prior patents, but here they must be considered, not as elements, per se, but as a part of the whole combination claimed.

So far as the Lieb patent is concerned, it seems to us to be very remote highway guard-rail art, and, in view of this fact, we do not think it would be obvious to one skilled in the art to employ such posts in the combination defined by the appealed claims.

It is our view that appellant is entitled to the allowance of claims 3, 4, 5, 6, 19, and 26.

With respect to claim 9, appellant contends that it should be read in the light of his specification and drawings, and, in effect, that when so considered, "supports," as used in the claim, means the posts of the guard-rail structure.

This argument does not seem sound to us, and we think there was no error in the rejection of that claim.

For the reasons indicated, the decision of the board affirming that of the examiner is modified. It is affirmed as to claim 9 and reversed as to claims 3, 4, 5, 6, 19, and 26.

Modified.

29 C.C.P.A. (Patents)

## In re MEAD.

### Patent Appeal No. 4599.

Court of Customs and Patent Appeals.
April 27, 1942.

Charles W. Mortimer, of New York City, for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Judge.